Filed 4/28/14  P. v. Vigil CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057420 |
| v. | (Super.Ct.No. RIF1106246) |
| JAMES RAY VIGIL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Johnson, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Linh Lam, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant James Ray Vigil appeals his conviction for transportation of methamphetamine, possession of methamphetamine for sale and possession of drug paraphernalia. He contends that the omission of jury instructions on accomplice testimony and of a limiting instruction on the use of evidence admitted pursuant to Evidence Code section 1101, subdivision (b), either individually or cumulatively, require reversal of his conviction. We find no prejudicial error, either individually or cumulatively.

## PROCEDURAL HISTORY

An information charged defendant with possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 2), and possession of drug paraphernalia (Health & Saf. Code, § 11346; count 3). The information also alleged one strike prior. (Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1).)

A jury convicted defendant on all three counts and the trial court found the strike allegation true.

The court sentenced defendant to the middle term of three years on count 2, doubled pursuant to Penal Code sections 667, subdivisions (c) and (e)(1) and 1170.12, subdivision (c)(1). The court imposed a term of four years on count 1, stayed pursuant to Penal Code section 654, and a concurrent term of 90 days in county jail on count 3.

Defendant filed a timely notice of appeal.

FACTS

About 11:30 p.m. on December 25, 2011, Riverside Police Officer Jeff Maier stopped a silver Dodge Charger for having no rear license plate. The car was occupied by defendant and Sarah Roberts. Defendant was driving. The car was registered to Roberts' mother. Both occupants appeared to Maier to be under the influence of a drug or alcohol.

Maier detained and handcuffed defendant. During a patdown search, Maier found a cell phone in defendant's pocket. The phone received three or four calls during the investigation. Maier also found $100 on defendant's person.

Maier placed defendant in the rear seat of his patrol car. He then spoke to Roberts and directed her to sit on the front push bar of his patrol car. He called for a female officer to conduct a patdown. Maier searched a black backpack which was in the rear seat of the Charger, within reach of both the driver and the passenger. The backpack contained a pair of men's basketball shorts, a container of men's deodorant, several empty plastic baggies and a gram scale. When Maier asked Roberts if the backpack was hers, she said it was not and gestured toward defendant, apparently indicating that it belonged to him. Roberts told him that she had a glass methamphetamine pipe in the waistband of her pants. She retrieved the pipe and gave it to Maier. The pipe was wrapped in a bandana and had burn marks on it.

Officer Reed, a female, conducted a patdown search of Roberts. From Roberts' brassiere,[1] she retrieved 10 baggies, similar to those in the backpack. The baggie contained a white substance later determined to contain methamphetamine.

Officer Maier searched defendant's cell phone and found an exchange of text messages which, in his opinion, indicated that defendant engaged in drug sales. Maier opined that defendant had the baggies and the scale because he was getting ready to sell the methamphetamine.

Caroline Sjogren, who lived across the street from defendant for several months before his arrest in this incident, testified that between July 1 and December 25, 2011, she saw defendant engage in suspicious activities. At all hours of the day and night, defendant would walk out of his house, approach cars parked a short distance away and conduct a quick exchange or handshake with the person in the car. These exchanges varied. Sometimes it would be only a handshake before defendant walked away; sometimes he exchanged words with the occupant of the car and sometimes he did not; sometimes there was shouting. The exchange would sometimes involve a plastic sandwich bag or a brown paper bag. Sometimes visitors would go to defendant's house and leave again after a short period of time. The exchanges involved people of different ages, sexes and races.

---

[1] Or her "brazier," according to the Attorney General. It was, after all, a chilly December night.

Detective Lackey testified as an expert in drug sales. He opined that the methamphetamine in this case had a street value of $250 to $300, or double that amount if broken down into smaller packages. Based on the trial evidence and his review of the police reports, he opined that the methamphetamine was possessed for sale. He also testified that to avoid being found in possession of drugs by the police, drug dealers will sometimes hide their drugs on the person of a female companion who is not on probation or parole and would not be searched if they were stopped by the police. He testified that drug dealers know that male officers are hesitant to search females, so the dealers will have their female companion hide the drugs inside their clothing or in a body cavity.

### DISCUSSION

### 1.

### THE OMISSION OF AN ACCOMPLICE INSTRUCTION WAS NOT PREJUDICIAL

"A conviction can not [*sic*] be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen. Code, § 1111.) Roberts was charged with the same offenses as defendant. Defendant contends that Roberts was an accomplice as a matter of law and that the trial court had a sua sponte duty to instruct the jury using CALCRIM No. 335, or in the alternative,

5

CALCRIM No. 334.[2]  He contends that because Roberts' testimony was the centerpiece

of the prosecution's case, the court's failure to so instruct the jury deprived him of his

[footnote continued on next page]

---

[2]  CALCRIM No. 335 applies when there is no dispute that a witness was an accomplice.  It provides:

"If the crime[s] of <insert charged crime[s]> (was/were) committed, then <insert name[s] of witness[es]> (was/were) [an] accomplice[s] to (that/those) crime[s].

"You may not convict the defendant of <insert crime[s]> based on the (statement/ [or] testimony) of an accomplice alone. You may use the (statement/ [or] testimony) of an accomplice to convict the defendant only if:

"1 The accomplice's (statement/ [or] testimony) is supported by other evidence that you believe;

"2 That supporting evidence is independent of the accomplice's (statement/ [or] testimony); [¶] AND

"3 That supporting evidence tends to connect the defendant to the commission of the crime[s].

"Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact (mentioned by the accomplice in the statement/ [or] about which the witness testified). On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime.

"[The evidence needed to support the (statement/ [or] testimony) of one accomplice cannot be provided by the (statement/ [or] testimony) of another accomplice.]

"Any (statement/ [or] testimony) of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that (statement/ [or] testimony) the weight you think it deserves after examining it with care and caution and in the light of all the other evidence."

CALCRIM No. 334 provides:

"Before you may consider the (statement/ [or] testimony) of <insert name[s] of witness[es]> as evidence against (the defendant/ <insert names of defendants>) [regarding the crime[s] of <insert name[s] of crime[s] if corroboration only required for some crime[s]>], you must decide whether <insert name[s] of witness[es]>) (was/were) [an] accomplice[s] [to (that/those) crime[s]]. A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if:

"1 He or she personally committed the crime; [¶] OR

"2 He or she knew of the criminal purpose of the person who committed the crime; [¶] AND

*[footnote continued from previous page]*

"3 He or she intended to, and did in fact, (aid, facilitate, promote, encourage, or instigate the commission of the crime[;]/ [or] participate in a criminal conspiracy to commit the crime).

"The burden is on the defendant to prove that it is more likely than not that <insert name[s] of witness[es]> (was/were) [an] accomplice[s].

"[An accomplice does not need to be present when the crime is committed. On the other hand, a person is not an accomplice just because he or she is present at the scene of a crime, even if he or she knows that a crime will be committed or is being committed and does nothing to stop it.]

"[A person who lacks criminal intent but who pretends to join in a crime only to detect or prosecute those who commit that crime is not an accomplice.]

"[A person may be an accomplice even if he or she is not actually prosecuted for the crime.]

"[You may not conclude that a child under 14 years old was an accomplice unless you also decide that when the child acted, (he/she) understood:

"1 The nature and effect of the criminal conduct;

"2 That the conduct was wrongful and forbidden; [¶] AND

"3 That (he/she) could be punished for participating in the conduct.]

"If you decide that a (declarant/ [or] witness) was not an accomplice, then supporting evidence is not required and you should evaluate his or her (statement/ [or] testimony) as you would that of any other witness.

"If you decide that a (declarant/ [or] witness) was an accomplice, then you may not convict the defendant of <insert charged crime[s]> based on his or her (statement/ [or] testimony) alone. You may use the (statement/ [or] testimony) of an accomplice to convict the defendant only if:

"1 The accomplice's (statement/ [or] testimony) is supported by other evidence that you believe;

"2 That supporting evidence is independent of the accomplice's (statement/ [or] testimony); [¶] AND

"3 That supporting evidence tends to connect the defendant to the commission of the crime[s].

"Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime[s], and it does not need to support every fact (mentioned by the accomplice in the statement/ [or] about which the accomplice testified). On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime.

"[The evidence needed to support the (statement/ [or] testimony) of one accomplice cannot be provided by the (statement/ [or] testimony) of another accomplice.]

*[footnote continued on next page]*

federal constitutional trial rights and/or constituted prejudicial error under *People v. Watson* (1956) 46 Cal.2d 818.

The Attorney General contends that Roberts was not an accomplice but merely an accessory, and that the omission of CALCRIM No. 334 or CALCRIM No. 335 was therefore not error. In the alternative, she contends that if the omission was error, it was harmless because the record includes sufficient corroborating evidence.

We agree that Roberts was an accomplice as defined in Penal Code section 1111. However, the omission of an accomplice instruction was not prejudicial.

"The general rule is that the testimony of all witnesses is to be judged by the same legal standard. In the case of testimony by one who might be an accomplice, however, the law provides two safeguards. The jury is instructed to view with caution testimony of an accomplice that tends to incriminate the defendant. It is also told that it cannot convict a defendant on the testimony of an accomplice alone." (*People v. Howard* (2008) 42 Cal.4th 1000, 1021–1022, italics omitted.)

"Error in failing to instruct the jury on consideration of accomplice testimony at the guilt phase of a trial constitutes state-law error, and a reviewing court must evaluate whether it is reasonably probable that such error affected the verdict. [Citation.] [¶] Any error in failing to instruct the jury that it could not convict defendant on the testimony of

*[footnote continued from previous page]*

"Any (statement/ [or] testimony) of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that (statement/ [or] testimony) the weight you think it deserves after examining it with care and caution and in the light of all the other evidence."

8

an accomplice alone is harmless if there is evidence corroborating the accomplice's testimony. "'Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense.'" [Citation.]" (*People v. Williams* (2010) 49 Cal.4th 405, 456.) The corroborating evidence is sufficient "'"if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth."'" (*People v. Szeto* (1981) 29 Cal.3d 20, 27.) Although the corroborating evidence "'"must do more than raise a conjecture or suspicion of guilt, it is sufficient if it tends in some degree to implicate the defendant." [Citation.]'" (*Ibid.*)

The following evidence sufficiently connected defendant with the commission of the offenses, independent of Roberts' testimony:

Officer Maier testified that at the time of the stop, Roberts had on her person a glass pipe which could be used to smoke methamphetamine and 10 baggies containing what turned out to be methamphetamine. The backpack in the rear passenger area of the car was within reach of both the driver and the passenger. The backpack contained additional empty baggies similar to those found on Roberts and a gram scale. The backpack also contained men's basketball shorts and a container of men's deodorant. The backpack did not contain any items which indicated that it might belong to Roberts. Maier also observed a text message exchange on defendant's cell phone which, in his opinion, concerned a drug transaction. Finally, both defendant and Roberts appeared to be under the influence of a drug or alcohol.

9

Detective Lackey testified that the methamphetamine was packaged for sale, based on the quantities, the packaging and the text message exchange on defendant's cell phone. He also testified that it is common for drug dealers to pass off their drugs to a female companion if they anticipated being stopped, because a female, unless she is on probation or parole, is not likely to be searched.

Caroline Sjogren's testimony concerning defendant's activities on the street where they both lived supported the inference that defendant was engaging in selling drugs before this incident.

Even without Roberts' testimony, this evidence would have been sufficient to support the inference that defendant possessed and transported the methamphetamine for sale, either individually or jointly with Roberts, and that he possessed the pipe, also either individually or jointly with Roberts. A fortiori, it was sufficient to corroborate her testimony. Accordingly, we reject defendant's contention that it was "only because of [Roberts'] testimony" that possession of the methamphetamine and the pipe could be attributed to defendant.

The absence of an accomplice instruction may also be deemed nonprejudicial where the jury is otherwise instructed as to factors to consider in determining whether a witness is credible. (See *People v. Lewis* (2001) 26 Cal.4th 334, 371.) Here, the jury was given ample reason to view Roberts' testimony with caution. Roberts testified that she had entered into a plea agreement which provided that if she fully cooperated with the investigation into defendant's possession of controlled substances for sale and if she testified truthfully, she would be permitted to plead to one count of the lesser charge of

10

simple possession of methamphetamine (Health & Saf. Code, § 11377), the other charges would be dismissed, and she would be eligible for diversion or drug treatment and would serve no time in custody. Further, an additional misdemeanor involving a charge of being under the influence of a controlled substance would be dismissed. Before this agreement was reached, the district attorney had offered Roberts six months in jail in return for a plea of guilty to possession of methamphetamine for sale and transportation of methamphetamine. Defense counsel's closing argument focused on Roberts' credibility and her motivation to "throw[] [defendant] under the bus" in order to get the benefit of her plea agreement. And, the jury was instructed that in determining the weight and credibility of a witness's testimony, they should consider whether the witness was influenced by "a personal interest in how the case is decided" or whether the witness was promised leniency.

For the foregoing reasons—both the sufficiency of independent evidence connecting defendant to the charged offenses and the sufficiency of the instruction on witness credibility—we conclude that it is not reasonably probable that the omission of the accomplice instruction affected the verdict. (*People v. Williams*, *supra*, 49 Cal.4th at p. 456.)

2.

DEFENDANT DID NOT PRESERVE FOR REVIEW ANY ISSUE PERTAINING TO

THE OMISSION OF CALCRIM NO. 375

Prior to trial, defendant sought an order excluding the testimony of his neighbor, Caroline Sjogren, concerning her observation of conduct on defendant's part which might

11

support the inference that defendant was engaged in drug sales out of his home. The court denied the motion but agreed to hold a hearing pursuant to Evidence Code section 402 before Sjogren testified. After the 402 hearing, the court ruled Sjogren's testimony admissible with respect to activities she witnessed between July and December 25, 2011, the date of the charged offenses.

In her list of requested instructions, defense counsel requested CALCRIM No. 375, on the use of evidence admitted pursuant to Evidence Code section 1101, subdivision (b). The instruction was not given. Defendant now contends that the omission was prejudicial error. We conclude, however, that the issue was not preserved for appellate review.

Evidence Code section 1101, subdivision (a), provides that, with certain exceptions not relevant here, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivision (b) of that statute provides, however, that "evidence that a person committed a crime, civil wrong, or other act" is admissible when it is "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .)." (Evid. Code, § 1101, subd. (b), hereafter section 1101(b).) CALCRIM No. 375 instructs the jury as to the limited purpose for which the evidence was admitted pursuant to Evidence Code section 1101(b) and instructs that the evidence is not sufficient by itself to prove that the defendant is guilty of the offense to which it relates.

12

If evidence is admitted pursuant to section 1101(b), the trial court is required to give CALCRIM No. 375 upon request.  (Evid. Code, § 355.)  However, a bare request is not sufficient:  In order to preserve for appellate review a claim that the trial court erroneously refused a requested instruction, "a defendant must not only request the court to act, but must press for a ruling.  The failure to do so forfeits the claim."  (*People v. Ramirez* (2006) 39 Cal.4th 398, 472.)  Here, defense counsel requested CALCRIM No. 375 by checking that instruction on defendant's list of requested instructions.  There is nothing in the record which shows that the court refused the instruction despite defendant's request or that defense counsel explained why the proposed instruction was proper and requested a ruling.  (*People v. Ramirez*, at p. 472.)  That absence, plus the fact that defense counsel never sought to exclude Sjogren's testimony on the basis of section 1101(b), suggests that counsel intentionally withdrew her request for CALCRIM No. 375.[3]  In any event, any claim of error was forfeited.

3.

THE IS NO CUMULATIVE ERROR

Defendant argues that even if neither instructional error constitutes reversible error in itself, the combination of the two errors was prejudicial, thus requiring reversal of his conviction.  We reject this contention because the record is insufficient to preserve defendant's claim of error concerning CALCRIM No. 375.  Consequently, there is no basis for a claim of cumulative error.

---

[3] Counsel argued only that the evidence was more prejudicial than probative and should be excluded pursuant to Evidence Code section 352 and on relevance grounds.

13

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

KING
J.

14